## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| PORTIA MCCOLLUM, Derivatively on Behalf of Nominal Defendant UNITEDHEALTH GROUP INCORPORATED, | ) ) ) ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW P. WITTY, STEPHEN HEMSLEY, CHARLIE BAKER, TIMOTHY P. FLYNN, PAUL R. GARCIA, KRISTEN L. GILL, MICHELE J. HOOPER, F. WILLIAM MCNABB, III, VALERIE MONTGOMERY RICE, JOHN H. NOSEWORTHY, and BRIAN THOMPSON, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITEDHEALTH GROUP INCORPORATED, | ) ) | |
| | ) | |
| Nominal Defendant. | ) | |

## <u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Portia McCollum ("Plaintiff"), by and through her undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant UnitedHealth Group Incorporated ("UnitedHealth" or the "Company"), against certain current and former executive officers and members of the Company's Board of Directors (the "Board") for breaches of fiduciary duties, unjust enrichment, waste of corporate assets, and violations of Sections 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters,

1

based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, conference call transcripts and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding UnitedHealth, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought on behalf of UnitedHealth against certain current and former officers and members of the Company's Board (collectively, the "Individual Defendants") (defined below) for, among other things, breaching their fiduciary duties to the Company and its stockholders by intentionally or recklessly making or permitting the dissemination of materially false and misleading statements and omissions between March 14, 2022 and February 27, 2024, inclusive (the "Relevant Period").

2.     UnitedHealth is a multinational healthcare and wellbeing company providing insurance products and services, healthcare, and care delivery services. The Company operates two distinct and complementary businesses: UnitedHealthcare and Optum. Optum is an information and technology-enabled business serving the broad health care marketplace with services such as care management, pharmacy care services, wellness and consumer engagement, as well as data, analytics, research, and consulting solutions. UnitedHealthcare provides health insurance to individuals, employers, and small businesses and is the largest insurance provider in the United States.

3.     Optum is a leading company in the health insurance market for first-pass claims editing, which determines whether a particular claim should be paid or rejected. First-pass claims

editing is used to process all claims that a health insurer receives. Another important input in health insurance markets are Electronic Data Interchange ("EDI") clearinghouses, which enable the transmission of claims, remittances, and other critical information between payers and providers.

4.      Prior to the start of the Relevant Period, UnitedHealth operated an EDI clearinghouse through Optum, with UnitedHealthcare as its largest customer.

5.      On January 6, 2021, UnitedHealth announced that Optum would acquire healthcare technology firm Change Healthcare ("Change") and integrate it into its existing Optum business. Change provides data solutions aimed at improving clinical decision making and simplifying payment processes across the healthcare system. Change provides the market leading product in claims editing and also operated the largest EDI clearinghouse in the United States. As a result, Change has access to a significant amount of customer sensitive information ("CSI") and claims data. In addition, some of Change's customers grant "secondary-use rights" to this data, giving Change the right to use the data for purposes beyond providing EDI clearinghouse service.

6.      On February 24, 2022, following the Change announcement, the United States Department of Justice ("DOJ") filed a lawsuit challenging UnitedHealth's acquisition of Change. The DOJ alleged that the proposed acquisition would violate antitrust laws because the integration of Change and Optum would give UnitedHealth unparalleled access to information regarding nearly every health insurer, as well as health data on every single American. UnitedHealth assured the DOJ, investors and customers that Optum would "maintain robust firewall processes" to prevent CSI from being shared between Optum and UnitedHealthcare.

7.      UnitedHealth created a new firewall policy in May 2022 for Optum and UnitedHealthcare which addressed the sharing of CSI following the Change acquisition. The firewall policy was designed to keep Optum and UnitedHealthcare data separate post-merger.

8.      In September 2022, following a trial in the DOJ antitrust lawsuit, the court in that action ultimately permitted the acquisition, repeatedly crediting UnitedHealth's firewall policy and commitment to preventing the sharing of data between UnitedHealthcare and Optum as the rationale for allowing the deal to proceed. The court further explained that UnitedHealth "has maintained a corporate antitrust firewall that expressly prohibits the sharing of CSI between business units" and found that the "widespread use of firewalls in the industry, United[Health]'s history of compliance with its own firewalls, the customer contracts, and the convincing testimony from senior executives about United[Health]'s practices and incentives-weighs strongly against the Government's position."

9.      On February 27, 2024, however, the Wall Street Journal reported that the DOJ had re-opened its antitrust investigation into UnitedHealth, disclosing to the public for the first time that the DOJ was investigating the relationships between the Company's various segments, including Optum.

10.      On this news, the price of UnitedHealth stock dropped 12%, from a closing price of $525.32 per share on February 26, 2024, to a closing price of $513.42 per share on February 27, 2024. The price of UnitedHealth stock continued to decline over the days, closing at $498.28 per share on February 28, 2024, over $27 lower than the price on February 26, 2024.

11.      As set forth herein, the Individual Defendants breached their fiduciary duties by issuing, causing the issuance of, and/or failing to correct the materially false and misleading statements and omissions of material fact to the investing public. Specifically, the Individual Defendants made or caused the Company to make false and misleading statements, and omitted material facts, in that UnitedHealth never established proper firewalls between Optum and UnitedHealthcare as required by its own policy, and as it told the court in the antitrust action, the

DOJ and investors it would do. Despite assurances to the contrary, there was never a meaningful technological separation between Optum and UnitedHealthcare that prevented the sharing of CSI. As a result, the Individual Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

12.     Additionally, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain adequate internal controls.

13.     As a result of the foregoing, a securities fraud class action was filed against the Company, Chief Executive Officer ("CEO") Andrew Witty ("Witty"), Chair of the Company's Board Stephen Hemsley ("Hemsley"), and UnitedHealthcare CEO Brian Thompson ("Thompson") captioned *City of Hollywood Firefighters' Pension Fund v. UnitedHealth Group Inc. et al*, Docket No. 0:24-cv-01743 (D. Minn. May 14, 2024) (the "Securities Class Action"). The Securities Class Action has exposed the Company to massive class-wide liability.

14.     Additionally, during the Relevant Period, Defendants Hemsley and Thompson sold substantial amounts of their personally held UnitedHealth stock while in the possession of material non-public information. UnitedHealth was aware of the DOJ investigation since at least October 2023. Between October 2023 and February 2024, when the DOJ investigation came to light, Defendant Hemsley sold over $102 million of his personally held UnitedHealth shares. During the same time period, Defendant Thompson sold over $15 million of his personally held UnitedHealth shares.

15.     In light of the Individual Defendant's misconduct—which has subjected the Company to the Securities Class Action, the need to undertake internal investigations, the need to implement adequate internal controls over its financial reporting, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were

improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—the Company will have to expend millions of dollars.

16.     Moreover, in light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and Defendants' liability in the Securities Class Action, their being beholden to each other, their longstanding business and personal relationships with each other, and their not being disinterested and/or independent directors, a majority of UnitedHealth's Board cannot consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company with the requisite level of disinterestedness and independence. Accordingly, Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of sections 10(b) of the Exchange Act and Rule 10b-5 (17 C.F.R.§240.10b-5) promulgated thereunder by the SEC.

18.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

19.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

20.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

21.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because Nominal Defendant UnitedHealth is headquartered in this District, conducts business in this District, and several of the acts and omissions charged herein occurred in substantial part in this District.

## PARTIES

*Plaintiff*

22.     Plaintiff is and has been a continuous shareholder of UnitedHealth common stock at all relevant times.

*Nominal Defendant*

23.     Nominal Defendant UnitedHealth is incorporated under the laws of Delaware, with its principal executive offices located in Minnetonka, Minnesota. UnitedHealth's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "UNH."

*Individual Defendants*

24.     Defendant Witty has served as the Company's CEO and as a member of the Board since February 2021. Witty previously served as a director from August 2017 to March 2018, at which point he stepped down to serve as CEO of Optum. As set forth in the proxy statement filed by UnitedHealth with the SEC on April 22, 2024 ("the 2024 Proxy"), Witty received $23,534,936 in compensation from the Company in 2023. According to the 2024 Proxy, Witty beneficially owned 96,919 shares of UnitedHealth's common stock as of April 5, 2024. Defendant Witty is also named as a defendant in the Securities Class Action.

25.     Defendant Hemsley has served as a member of the Board since 2000, and as nonexecutive Chair of the Board since November 2019. Hemsley previously served as Executive Chair of the Board from September 2017 to November 2019, and as CEO of the Company from

November 2006 to August 2017. As set forth in the 2024 Proxy, Hemsley received $595,348 in compensation from the Company in 2023. According to the 2024 Proxy, Hemsley beneficially owned 1,182,182 shares of UnitedHealth's common stock as of April 5, 2024.

26.     Defendant Charlie Baker ("Baker") has served as a member of the Board since November 2023. Baker also serves as Chair of the Board's Health and Clinical Practice Policies Committee and as a member of the Audit and Finance Committee (the "Audit Committee"). As set forth in the 2024 Proxy, Baker received $59,327 in compensation from the Company in 2023. According to the 2024 Proxy, Baker beneficially owned 290 shares of UnitedHealth's common stock as of April 5, 2024.

27.     Defendant Timothy P. Flynn ("Flynn") has served as a member of the Board since January 2017. Flynn also serves as Chair of the Board's Compensation and Human Resources Committee and as a member of the Governance Committee. As set forth in the 2024 Proxy, Flynn received $400,162 in compensation from the Company in 2023. According to the 2024 Proxy, Flynn beneficially owned 11,763 shares of UnitedHealth's common stock as of April 5, 2024.

28.     Defendant Paul R. Garcia ("Garcia") has served as a member of the Board since November 2021. Garcia also serves as a member of the Board's Audit and Finance Committee. As set forth in the 2024 Proxy, Garcia received $366,800 in compensation from the Company in 2023. According to the 2024 Proxy, Garcia beneficially owned 4,053 shares of UnitedHealth's common stock as of April 5, 2024.

29.     Defendant Kristen L. Gill ("Gill") has served as a member of the Board since December 2022. Gil also serves as a member of the Board's Audit and Finance Committee. As set forth in the 2024 Proxy, Gil received $351,800 in compensation from the Company in 2023. According to the 2024 Proxy, Gil beneficially owned 1,036 shares of UnitedHealth's common

stock as of April 5, 2024.

30.     Defendant Michele J. Hooper ("Hooper") has served as a member of the Board since 2007 and as Lead Independent Director since October 2021. As set forth in the 2024 Proxy, Hooper received $441,519 in compensation from the Company in 2023. According to the 2024 Proxy, Hooper beneficially owned 39,013 shares of UnitedHealth's common stock as of April 5, 2024.

31.     Defendant F. William McNabb, III ("McNabb") has served as a member of the Board since February 2018. McNabb also serves as Chair of the Board's Audit and Finance Committee and as a member of the Governance Committee. As set forth in the 2024 Proxy, McNabb received $392,883 in compensation from the Company in 2023. According to the 2024 Proxy, McNabb beneficially owned 12,812 shares of UnitedHealth's common stock as of April 5, 2024.

32.     Defendant Valerie Montgomery Rice ("Rice") has served as a member of the Board since August 2017. Rice also serves as Chair of the Board's Health and Clinical Practice Policies Committee and as a member of the Compensation and Human Resources Committee. As set forth in the 2024 Proxy, Rice received $391,050 in compensation from the Company in 2023. According to the 2024 Proxy, Rice beneficially owned 5,449 shares of UnitedHealth's common stock as of April 5, 2024.

33.     Defendant John H. Noseworthy ("Noseworthy") has served as a member of the Board since February 2019. Noseworthy also serves as Chair of the Board's Governance Committee and as a member of the Compensation and Human Resources Committee and Health and Clinical Practice Policies Committee. As set forth in the 2024 Proxy, Noseworthy received $391,050 in compensation from the Company in 2023. According to the 2024 Proxy, Noseworthy

beneficially owned 4,957 shares of UnitedHealth's common stock as of April 5, 2024.

34.     Defendant Thompson has served as the CEO of UnitedHealthcare since April 2021. As set forth in the 2024 Proxy, Thompson received $10,221,898 in compensation from the Company in 2023. According to the 2024 Proxy, Thompson beneficially owned 32,852 shares of UnitedHealth's common stock as of April 5, 2024. Defendant Thompson is also named as a defendant in the Securities Class Action.

35.     Defendants referenced in paragraphs 24 through 34 are herein referred to as the "Individual Defendants."

36.     The Individual Defendants, together with UnitedHealth, are herein referred to as "Defendants."

### FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

37.     By reason of their positions as officers and/or directors of UnitedHealth, and because of their ability to control the business and corporate affairs of UnitedHealth, the Individual Defendants owed UnitedHealth and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage UnitedHealth in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of UnitedHealth and its shareholders so as to benefit all shareholders equally.

38.     Each director and officer of the Company owes to UnitedHealth and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

39.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of UnitedHealth, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

40.     To discharge their duties, the officers and directors of UnitedHealth were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

41.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of UnitedHealth, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

42.     As senior executive officer and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this

Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

43.     To discharge their duties, the officers and directors of UnitedHealth were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.   By virtue of such duties, the officers and directors of UnitedHealth were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, Minnesota, and the United States, and pursuant to UnitedHealth's own Code of Conduct;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how UnitedHealth conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of UnitedHealth and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that UnitedHealth's operations would comply with all applicable laws and UnitedHealth's financial statements and regulatory filings filed with the

SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)  exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)  refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)  examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

44.  Each of the Individual Defendants further owed to UnitedHealth and the shareholders the duty of loyalty requiring that each favor UnitedHealth's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

45.  At all times relevant hereto, the Individual Defendants were the agents of each other and of UnitedHealth and were at all times acting within the course and scope of such agency.

46.  Because of their advisory, executive, managerial, and directorial positions with UnitedHealth, each of the Individual Defendants had access to adverse, non-public information about the Company.

47.  The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by UnitedHealth.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

48.  In committing the wrongful acts alleged herein, the Individual Defendants have

pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants caused the Company to conceal the true facts as alleged herein.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

49.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

50.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

51.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of UnitedHealth, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

52.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

53.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Defendants and of UnitedHealth and at all times acted within the course and

scope of such agency.

## UNITEDHEALTH'S CODE OF CONDUCT

54.     UnitedHealth maintains a Code of Conduct intended to provide guidelines to help

employees "sustain the highest possible standards of ethical behavior in [their] work." To that end,

the Code of Conduct states: "We speak the truth. We deliver on our promises. We have the courage

to acknowledge mistakes and do what is needed to address them."

55.     In a section concerning "Integrity of Books and Records," the Code of Conduct

provides:

> UnitedHealth Group is committed to the integrity of its records, books, and
> financial and other reporting. Employees are responsible for ensuring that all books,
> records, accounting, and reporting are accurate and complete, and properly reflect
> the actual transaction event recorded and are retained according to Company policy.
> In addition, U.S. securities laws impose specific obligations on each director or
> employee involved in the Company's financial disclosure process, including the
> Senior Financial Officers. The Senior Financial Officers and the individuals who
> assist them in the disclosure processes must be familiar with and comply with all
> controls and procedures that ensure that public reports and documents filed with
> the U.S. Securities and Exchange Commission meet the Company's obligations
> under U.S. securities laws and rules.

56.     The Code of Conduct further states[1]:

> **Each director or employee involved in UnitedHealth Group's disclosure
> process is responsible for the accuracy and completeness of facts regarding the
> Company.** This includes representations to the Company's independent auditors,
> governmental regulators, and self-regulatory organizations. Directors and
> employees must review and critically analyze proposed disclosures or, where
> appropriate, delegate this task to others.

57.     Employees and directors also have a duty to report suspected violations of the Code

of Conduct and potentially illegal or unethical conduct. The Code of Conduct provides that failing

to report suspected violations or to cooperate with the investigation "is itself a violation of

---

[1] Emphases in quoted material from the Code of Conduct are in the original.

Company policy and can lead to discipline up to and including termination of employment."

58.     In a section addressing "Integrity," the Code of Conduct states:

**Do not buy or sell any stock based on material, non-public information you have received.** You must never use or disclose to others material, non- public information about UnitedHealth Group or another company as the basis for buying or selling stock.

**Do not use Company property, information, or your position for personal gain, or to compete with UnitedHealth Group.** Each of us has a duty to advance the Company's interests when an opportunity is presented. You may not use Company property, information, or your position with the Company to take advantage of corporate opportunities for your personal gain, unless the opportunity was first presented to and rejected by the Company, and you will not be competing with the Company's business activities.

59.     In a section titled "Privacy and Information Security," the Code of Conduct states that "[m]aintaining the privacy and security of personal information that we collect, use, or that is entrusted to our care is an essential component of UnitedHealth Group's mission and its commitment to integrity and ethical behavior." The Code of Conduct further provides, in relevant part:

We are trusted and required to safeguard personal information reasonably and appropriately and to use or disclose such information only as authorized by the individual or in compliance with all applicable laws.

\*                      \*                      \*

**Understand the rules regarding handling personal information, including restrictions on transferring or accessing personal data from individuals who reside in another country**.  Recognize that part of your day-to-day responsibilities may include access to and use of someone's personal information and that the use or disclosure of such information is governed by laws, regulations, customer contracts, and Company policies. If you are unsure how to handle such information appropriately, ask one of the Resources listed in this section.

60.     In a question-and-answer section addressing "Fair Competition and Fair Dealing," the Code of Conduct states, in relevant part, that "Optum Health's provider businesses contract with competitors of UnitedHealthcare and may receive competitively-sensitive information, which

16

must be protected, and sharing the data requested without review and approval by legal counsel

could be a form of unfair competition."

61.     In a section titled "Communications and Marketing," the Code of Conduct

provides, in relevant part:

> Because we work for a publicly-traded company, we must be aware of the securities
> laws' requirements concerning public disclosure of Company information. In short,
> you may not discuss any material nonpublic information including, financial
> information and reports, executive personnel changes, lawsuits or regulatory
> actions, and mergers or acquisitions outside of the Company unless you have
> received specific approval from the UnitedHealth Group chief legal officer or
> Investor Relations, or are otherwise required to disclose such information.

## UNITEDHEALTH'S AUDIT COMMITTEE CHARTER

62.     UnitedHealth's Audit Committee Charter states that the purpose of the Audit

Committee is:

> (a) to assist the Board of Directors (the "Board") in fulfilling its oversight
> responsibilities relating to (i) the conduct and integrity of the Company's financial
> reporting to any governmental or regulatory body, the public or other users thereof,
> (ii) the Company's compliance with legal and regulatory requirements including
> privacy, cybersecurity and data protection, (iii) the efficacy of the Company's
> enterprise risk management structure and key processes, (iv) the qualifications,
> engagement, compensation, independence and performance of the Company's
> independent outside auditor, and (v) the performance of the Company's General
> Auditor and internal audit function, and (b) to prepare the report of the Committee
> required by the Securities and Exchange Commission ("SEC") to be included in the
> Company's annual proxy statement.

63.     The Audit Committee Charter states that the Audit Committee shall undertake the

following responsibilities and duties:

> - Meet to review and discuss with management and the independent outside
>   auditor the Company's annual and quarterly financial statements, including
>   reviewing the Company's specific disclosures under Management's Discussion
>   and Analysis of Financial Condition and Results of Operations. Based on its
>   discussions with management and the independent outside auditor, the
>   Committee shall recommend to the Board of Directors whether the Company's
>   annual financial statements should be included in the Company's Annual
>   Report on Form 10-K (or the Annual Report to Shareholders).

- Review the Annual Report on Form 10-K prior to filing.

- Discuss with management earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies. Discussion of earnings releases as well as financial information and earnings guidance may be done in a general manner (i.e., discussions of the types of information to be disclosed and the type of presentation to be made).

- Discuss significant findings and recommendations of the Company's independent outside auditor and the General Auditor and internal auditors, together with management's responses to those findings and recommendations.

- Review and discuss with the Company's Chief Executive Officer and Chief Financial Officer the procedures undertaken in connection with the Chief Executive Officer and Chief Financial Officer certifications for Forms 10-K and Forms 10-Q, including their evaluation of the Company's disclosure controls and procedures and internal controls.

- Prepare the Committee report required by SEC rules to be included in the Company's annual proxy statement.

*        *        *

- Review and approve the annual audit plans for the internal audit function and all material changes to such plans.

- Review and concur in the appointment and termination of the General Auditor.

- Periodically review and approve changes (if any) to the internal audit charter.

- Review significant internal audit results, including any problems or difficulties, together with management's action plans.

- Discuss regularly with the Company's General Auditor, the budget and staffing of the internal audit function, including responsibilities, organizational structure, auditor qualifications, and quality assurance reviews.

- Review the qualifications, performance and objectivity of the internal audit function.

- Review with management, the Company's enterprise risk management framework, including the governance structure, the guidelines and policies for assessing, identifying, managing, monitoring and reporting of significant risks.

- Meet periodically with management to review the Company's significant risks and the steps management has taken to monitor, control or mitigate such risks.

- In consultation with the Company's independent outside auditor, the General Auditor, and the internal auditors, consider the integrity of the Company's financial reporting processes, both internal and external.

- Discuss with management, the independent outside auditor, the General Auditor and the internal auditors, as appropriate: (a) any major issues regarding

accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, and major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of material control deficiencies; (b) analyses prepared by management and/or the independent outside auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements; (c) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements of the Company; and (d) the type and presentation of information to be included in earnings press releases (paying particular attention to any use of non-GAAP financial measures permitted under SEC rules).

- Establish regular and separate systems of reporting to the Committee by each of management, the General Auditor, and the independent outside auditor regarding any significant judgments, changes or improvements that have been made in management's preparation of the financial statements and the view of each as to appropriateness of such judgments.

- Discuss with the independent outside auditor, at least annually, any audit problems or difficulties and management's responses, any difficulties the auditor encountered during the course of the audit work, including any restrictions on the scope of the auditor's activities or on access to requested information, and any significant disagreements with management. The discussions with the independent outside auditor should address, to the extent applicable, any accounting adjustments that were noted or proposed by the independent outside auditor but were "passed" (as immaterial or otherwise), any communications between the audit team and its national office with respect to auditing or accounting issues presented by the engagement; and any "management" or "internal control" letter issued, or proposed to be issued, by the independent outside auditor to the Company.

- Discuss, at least annually, with the independent outside auditor the matters required to be discussed by the applicable requirements of the PCAOB and the SEC.

*          *          *

- Inquire of the Company's Chief Executive Officer and Chief Financial Officer as to the existence of any significant deficiencies in the design or operation of internal controls that could adversely affect the Company's ability to record, process, summarize and report financial data, any material weaknesses in internal controls, and any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal controls.

- Review with management the system the Company has in place to ensure that

the Company's financial statements, reports, and other financial information disseminated to governmental organizations and the public satisfy legal requirements.

- Review and assess the effectiveness of the Company's policies, procedures and resource commitment in the areas of compliance, ethics, and privacy, by interacting with the leadership and management responsible for these functions.

- Consider any tax issues, legal and regulatory matters or employee complaints or similar matters brought to the attention of the Committee that may have a material impact on the Company's financial statements or accounting policies.

*          *          *

- Oversee and review reports from the Chief Compliance and Ethics Officer regarding compliance with its Code of Business Conduct and Ethics and Principles of Ethics and Integrity.

- Receive and review periodic reports regarding matters relating to the Company's compliance with legal and regulatory requirements from the Chief Compliance and Ethics Officer, who has express authority to communicate directly with the Committee as necessary.

- Perform such other functions as assigned by law, the Company's Certificate of Incorporation or Bylaws, or the Board.

64. The Audit Committee Charter further charges the Audit Committee with the responsibility to "[r]"eview and assess the effectiveness of the Company's policies, procedures and resource commitment in the areas of cybersecurity and data protection, including key risk areas and mitigation strategies."

## **SUBSTANTIVE ALLEGATIONS**

### *Background*

65. On January 6, 2021, the Company announced the proposed acquisition of Change for nearly $13 billion.

66. On February 22, 2022, the DOJ announced that it, together with Attorneys General in Minnesota and New York, had filed a civil lawsuit today to stop the acquisition. The DOJ argued that post-acquisition, UnitedHealth, already the largest U.S. health insurer, would be able to use its rivals' information to gain an unfair advantage and harm competition in health insurance

markets, ultimately pushing up healthcare costs. The DOJ also argued that the transaction would eliminate United's only major rival for first-pass claims editing technology and give United a monopoly share in the market.

***Materially False and Misleading Statements***

67.    On March 13, 2022, the Company filed its Answer to the allegations in the complaint filed by the DOJ in the United States District Court for the District of Columbia. The following day, the Company publicly "agreed to make binding commitments to its customers and the Government" to "maintain its robust firewall processes—and extend them to Change's business—to protect sensitive customer data and provide information to customers to allow them to verify those firewall processes."

68.    On March 17, 2022, a document titled "Benefits of Combination with Change Healthcare" was posted on the Company's website. The document addressed the DOJ's lawsuit and stated that "Optum will maintain robust firewall processes and extend them to Change Healthcare's business—to protect sensitive customer data and provide information to customers to allow them to verify those firewall processes." The document also claimed that Optum "invests extraordinary time, money, and resources into safeguarding [CSI] and keeping it walled off from UnitedHealthcare" and that "UnitedHealth Group's existing firewalls and data-security policies prohibit employees from improperly sharing external-customer CSI."

69.    On April 5, 2022, the Company filed a press release on Form 8-K with the SEC. The press release stated that the DOJ's attempt to block the combination was "without merit" and "serves only to delay improving the experience and outcomes for all participants in the health system."

70.    In May 2022, the Company adopted a new firewall policy relating to the proposed

Change acquisition. The policy explicitly addressed the sharing of customers' CSI between Optum

and UnitedHealthcare and stated:

- "The disclosure of External Customer CSI to [UnitedHealth] business units that are competitors of such External Customers is strictly prohibited";

- "The use of External Customer CSI to benefit [UnitedHealth] business units that are competitors of such External Customers is strictly prohibited";

- UnitedHealth employees "may not access External Customer CSI unless such access is necessary to perform their job responsibilities";

- "External Customer CSI shall be logically separated from other [UnitedHealth] business unit data within Electronic Data Sites"; and

- "No employees of other [UnitedHealth] business units that are competitors of an External Customer shall have access to the location where External Customer CSI is stored within such Electronic Data Slides."

71.     On June 14, 2022, the Company published its 2022 Sustainability Report (the

"Sustainability Report"). The Sustainability Report declared that the Company was "focused" on

"maintaining data privacy and cybersecurity" and recognized its "obligation" to "protect the

information of all those we serve." The Sustainability Report also asserted that the Company was

""required to safeguard personal information reasonably and appropriately" and that the

"[p]rimary tools used to fulfill these obligations are cybersecurity and data privacy programs." The

Sustainability Report explained that UnitedHealth "manages a robust Information Security Risk

Management and Privacy Program that improves its ability to make risk-informed decisions by

conducting systematic and structured reviews of information security risks."

72.     With respect to UnitedHealth's data protection policies, the Sustainability Report

explained that the Company's "data protection policy applies to all lines of business and

subsidiaries" and that its "Code of Conduct outlines our commitment to protecting the information

entrusted to us. Supported by a comprehensive set of principles, our policies and programs describe

appropriate uses of data and the safeguards that protect the confidentiality and integrity of our

systems."

73.     On November 28, 2022, the Company published materials titled "Investor Conference 2022" (the "Conference Book") in preparation for its annual Investor Conference to be held the following day. The Conference Book highlighted the Company's "long-established firewalls and strong legal, reputational, ethical and financial incentives to protect patient and customer information."

74.     On June 1, 2023, UnitedHealth participated in the Bernstein Strategic Decisions Conference. During the conference, Defendant Witty acknowledged UnitedHealth's firewall requirements, noting that the Company was focused on improving performance by "exploiting the core synergy between Optum and UnitedHealthcare as much as we possibly can appropriately, of course, given the firewall requirements [that] are needed there."

75.     The statements detailed above were false and misleading, and omitted material facts, in that UnitedHealth never established proper firewalls between Optum and UnitedHealthcare as required by its own policy, and as it told the court in the antitrust action, the DOJ and investors it would do. Despite assurances to the contrary, there was never a meaningful technological separation between Optum and UnitedHealthcare that prevented the sharing of CSI. As a result, the Individual Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

***The Truth Emerges***

76.     The truth began to emerge on February 27, 2024, when the *Wall Street Journal* published an article titled "U.S. Opens UnitedHealth Antitrust Probe." The article reported that the DOJ had re-opened its antitrust investigation into UnitedHealth, stating that "investigators have in recent weeks been interviewing healthcare-industry representatives in sectors where UnitedHealth

competes, including doctor groups, according to people with knowledge of the meetings."

77.     Following this news, the price of UnitedHealth stock dropped 12%, from a closing price of $525.32 per share on February 26, 2024, to a closing price of $513.42 per share on February 27, 2024. The price of UnitedHealth stock continued to decline over the days, closing at $498.28 per share on February 28, 2024, over $27 lower than the price on February 26, 2024.

***Harm to the Company***

78.     As a direct and proximate result of the Individual Defendants' misconduct, UnitedHealth has lost and expended, and will lose and expend, millions of dollars.

79.     Such expenditures include, but are not limited to, legal fees associated with the Securities Class Action filed against the Company, its CEO, the Chair of the Board, and the CEO of UnitedHealthcare, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

80.     Such expenditures also include, but are not limited to, the cost of implementing measures to remediate the material weaknesses in the Company's internal control over financial reporting.

81.     Such losses also include, but are not limited to, significant compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company, including bonuses tied to the Company's attainment of certain objectives, and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

82.     As a direct and proximate result of the Individual Defendants' conduct, UnitedHealth has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust

enrichment.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

83.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

84.     UnitedHealth is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

85.     Plaintiff is an owner of UnitedHealth common stock and has been a continuous shareholder of Company stock at all relevant times.

86.     Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

87.     A pre-suit demand on the Board of UnitedHealth is futile and, therefore, excused. At the time this action was commenced, the ten-member Board consisted of Individual Defendants Witty, Hemsley, Baker, Flynn, Garcia, Gil, Hooper, McNabb, Rice, and Noseworthy (the "Director Defendants"). As set forth below, all ten Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action because they face a substantial likelihood of liability for misconduct alleged herein. Therefore, demand on the Board to institute this action is not necessary because such a demand would have been a futile and useless act.

88.     The acts complained of herein constitute violations of fiduciary duties owed by UnitedHealth's officers and directors, and these acts are incapable of ratification.

89.     The Director Defendants either knew or should have known of the false and

misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

90.     Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

91.     Each of the Director Defendants authorized and/or permitted false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

92.     Additionally, the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

93.     Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

94.     Additionally, the Director Defendants took no action to redress the harm suffered by the Company resulting from the misconduct alleged herein.

95.     Defendants McNabb, Baker, Garcia, and Gil (the "Audit Defendants") serve on the

Company's Audit Committee and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, financial reporting and the underlying internal controls and procedures over financial reporting, as well as the effectiveness of the Company's policies, procedures and resource commitment in the areas of cybersecurity and data protection. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business, finances, and operations as alleged above, and ensure that proper firewall procedures were in place. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

96.     Further, the Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Director Defendants to also adhere to the Company's standards of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein and failed to ensure that proper firewall procedures were in place. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

97.     Furthermore, during the Relevant Period, Director Defendant Hemsley sold substantial amounts of his personally held UnitedHealth stock while in the possession of material non-public information. UnitedHealth was aware of the DOJ investigation since at least October

2023. Between October 2023 and February 2024, when the DOJ investigation came to light, Defendant Hemsley sold over $102 million of his personally held UnitedHealth shares. In doing so, Defendant Hemsley has exposed himself to criminal liability and heightened civil liability and damages. These insider sales, occurring during the Relevant Period, create a further likelihood of additional significant liability, thus making Defendant Hemsley neither disinterested nor independent.

## **COUNT I**

### **Against The Individual Defendants For Violations of § 10(b)**
### **of the Exchange Act and Rule 10b-5**

98.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

99.    The Individual Defendants violated § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

100.    The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

101.    The Individual Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated.

28

102.    The Individual Defendants acted with scienter because they (i) knew that the public documents and statements issued or disseminated in the name of UnitedHealth were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

103.    The Individual Defendants, by virtue of their receipt of information reflecting the true facts of UnitedHealth, their control over, and/or receipt and/or modification of UnitedHealth's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning UnitedHealth, participated in the fraudulent scheme alleged herein.

104.    As a result of the foregoing, the market price of UnitedHealth common stock was artificially inflated. In ignorance of the falsity of the statements, stockholders relied on the statements described above and/or the integrity of the market price of UnitedHealth common stock in purchasing UnitedHealth common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

105.    In addition, as a result of the wrongful conduct alleged herein, the Company has suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Class Action and reputational harm.  The Individual Defendants, through their violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, have exposed the Company to millions of dollars in potential class-wide damages in the Securities Class Action.

## <u>COUNT II</u>

### Against The Individual Defendants

29

**For Breach Of Fiduciary Duty**

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    The Individual Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, candor, loyalty, and due care.

108.    The Individual Defendants willfully ignored the obvious deficiencies in the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

109.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

110.    Specifically, the Individual Defendants made or caused the Company to make false and misleading statements, and omitted material facts, in that UnitedHealth never established proper firewalls between Optum and UnitedHealthcare as required by its own policy, and as it told the court in the antitrust action, the DOJ and investors it would do. Despite assurances to the contrary, there was never a meaningful technological separation between Optum and

UnitedHealthcare that prevented the sharing of CSI. As a result, the Individual Defendants caused the Company's public statements to be materially false and misleading at all relevant times.

111.    In further breach of their fiduciary duties, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and omissions of material fact referenced herein.

112.    Additionally, the Individual Defendants breached their fiduciary duties of loyalty and good faith by failing to ensure that proper firewalls between Optum and UnitedHealthcare were in place, in contravention of the Company's own policies and representations to the DOJ.

113.    As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

114.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

115.    Plaintiff, on behalf of UnitedHealth, has no adequate remedy at law.

## COUNT III

**Against The Insider Trading Defendants
For Breach Of Fiduciary Duty (*Brophy*)**

116.    Plaintiff, incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

117.    UnitedHealth's Code of Conduct expressly warns employees and directors "Do not

31

buy or sell any stock based on material, non-public information you have received."

118.    As Chair of the Company's Board, Defendant Hemsley owed fiduciary duties of loyalty and good faith to the Company and is bound by its Code of Conduct. Despite this, Defendant Hemsley sold over $102 million of his personally held UnitedHealth shares between October 2023, when the Company first learned of the DOJ investigation, and February 2024, when the DOJ investigation came to light.

119.    As the CEO of UnitedHealthcare, Defendant Thompson owed fiduciary duties of loyalty and good faith to the Company and is bound by its Code of Conduct. Despite this, Defendant Thompson sold over $15 million of his personally held UnitedHealth shares between October 2023, when the Company first learned of the DOJ investigation, and February 2024, when the DOJ investigation came to light.

120.    The Insider Trading Defendants made these sales while in possession of inside information that the DOJ investigation was underway and that the Company had routinely made false and misleading statements in its public disclosures, as detailed above.

121.    The Insider Trading Defendants knew this was information the market would consider material and that it was virtually certain to harm the Company's stock price and made these sales before disclosing this material information to the public.

122.    By selling their stock while in possession of adverse, material non-public information, Defendants Hemsley and Thompson exploited their positions, breached their fiduciary duties, and violated the Company's Code of Conduct. Because the Insider Trading Defendants sold their stock before the non-public information in their possession could be publicly disclosed and harm the Company's stock price, Defendants Hemsley and Thompson improperly benefited from this breach of fiduciary duty and the Company is entitled to damages and the

imposition of a constructive trust on any profits obtained thereby.

123.     Plaintiff, on behalf UnitedHealth, has no adequate remedy at law.

## COUNT IV

### Against The Individual Defendants for Aiding and
### Abetting Breach of Fiduciary Duty

124.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.     By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

126.     Plaintiff on behalf of UnitedHealth, has no adequate remedy at law.

## COUNT V

### Against The Individual Defendants for Unjust Enrichment

127.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

128.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, UnitedHealth.

129.     The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from UnitedHealth that was tied to the performance or artificially inflated valuation of UnitedHealth or received compensation that

33

was unjust in light of the Individual Defendants' bad faith conduct.

130.   Plaintiff, as a shareholder and a representative of UnitedHealth, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

131.   Plaintiff, on behalf of UnitedHealth, has no adequate remedy at law.

## COUNT VI

### Against The Individual Defendants For Waste Of Corporate Assets

132.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

133.   The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of the Company's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

134.   As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (a) paying and collecting excessive compensation and bonuses; and (b) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

135.   As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

136.   Plaintiff, on behalf UnitedHealth, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Declaring that Plaintiff may maintain this derivative action on behalf of UnitedHealth and that Plaintiff is a proper and adequate representative of the Company;

B.      Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and unjust enrichment;

C.      Directing UnitedHealth to take all necessary actions to reform and improve its corporate governance and internal procedures to protect UnitedHealth and its stockholders from a repeat of the damaging events described herein, including, but not limited to:

- strengthening the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

- strengthening the Company's internal reporting and financial disclosure controls;

- developing and implementing procedures for greater shareholder input into the policies and guidelines of the Board; and

- strengthening the Company's internal operational control functions;

C.      Awarding punitive damages;

D.      Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: July 8, 2024

**ALTMAN LAW, PLLC**

By: */s/ Adam Altman*
        Adam Altman

Of Counsel:
        6701 West 23rd Street
        St. Louis Park, MN 55426

**RIGRODSKY LAW, P.A.**
        Telephone: (612) 335-3700
Seth D. Rigrodsky, Esq.
        Facsimile: (612) 928-2842
Gina M. Serra, Esq.
        Email: adam@altmanlf.com
Herbert W. Mondros, Esq.
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
        *Attorneys for Plaintiff*
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

**GRABAR LAW OFFICE**
Joshua H. Grabar, Esq.
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(267) 507-6085

## <u>VERIFICATION</u>

I, Portia McCollum, have reviewed the allegations made in this Verified Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. I further declare that I am a current holder, and have been a holder, of UnitedHealth Group Incorporated common stock at all relevant times.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _____ day of _____ 2024.

6/8/2024

Portia McCollum

Portia McCollum