## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

GERALD JOSEPH LOVOI,
derivatively on behalf of
UNITEDHEALTH GROUP INC.,

       Plaintiffs,

  v.

ANDREW WITTY, CHARLES BAKER,
TIMOTHY FLYNN, PAUL GARCIA, KRISTEN
GIL, STEPHEN HEMSLEY, MICHELE
HOOPER, F. WILLIAM MCNABB III,
VALERIE MONTGOMERY RICE, JOHN
NOSEWORTHY, and BRIAN THOMPSON,

       Defendants,

  -and-

UNITEDHEALTH GROUP INC., a Delaware
Corporation,

       Nominal Defendant.

Case No.

JURY TRIAL DEMANDED

## <u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Gerald Joseph Lovoi ("Plaintiff"), derivatively on behalf of UnitedHealth Group Inc. ("UnitedHealth" or the "Company"), brings the following Shareholder Derivative Complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties and violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, promulgated thereunder. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in this complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the U.S. Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in the securities class action *City of Hollywood Firefighters' Pension Fund v. UnitedHealth Group Inc., et al.*, Case No. 0:24-cv-01743

(D.Minn.); and (iii) other publicly available information.

## NATURE OF THE ACTION

1. This is a stockholder derivative action brought by Plaintiff, a stockholder of UnitedHealth, on behalf of the Company against the Defendants. This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least March 14, 2022 through February 27, 2024. During that time the Defendants (as defined herein) caused or allowed UnitedHealth to issue or make materially false and misleading statements concerning the Company's financial condition and business operations. Additionally, the Defendants caused or allowed UnitedHealth to file false and misleading statements with the SEC. Defendants Hemsley and Thompson also sold UnitedHealth stock while in possession of material nonpublic information.

2. UnitedHealth operates Optum and UnitedHealthcare, where UnitedHealthcare provides health benefit plans, while Optum provides patient care, pharmacy services, and data and technology services to hospitals, life sciences companies, physicians, and health benefit plans.

3. In February 2022, the DOJ initiated a lawsuit against UnitedHealth, seeking to block Optum's acquisition of Change Healthcare. The DOJ argued that UnitedHealthcare could use data from Change Healthcare to undercut other insurers and gain an advantage against its competitors. UnitedHealth won after trial, with the Court noting UnitedHealth's firewall policies would prevent the sharing of sensitive data between Optum and UnitedHealth.

4. UnitedHealth touted these firewall policies and the Company's data protection practices in documents to investors and did not mention the antitrust lawsuit nor firewall issues in its Forms 10-Q and 10-K filed between March 2022 and June 2023.

5. On February 27, 2024, the Wall Street Journal reported that the DOJ had opened an

antitrust investigation into the relationship between UnitedHealthcare and Optum, and whether UnitedHealthcare favors doctor groups acquired by Optum. Following this news, UnitedHealth's stock price dropped $35.79, or 6.8%, from a closing price of $525.32 on February 26, 2024, to $489.53 on March 1, 2024, after days of unusually heavy trading.

6.     The Company learned of the DOJ's new antitrust investigation on October 10, 2023. Between October 10, 2023 and February 27, 2024, insiders at UnitedHealth sold approximately $117 million of their UnitedHealth common stock.

7.     Through this action, Plaintiffs seek to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements and improperly trading in UnitedHealth stock in breach of their fiduciary duties to the Company.

**PARTIES**

**A.     Plaintiff**

8.     Plaintiff Gerald Joseph Lovoi is a current shareholder of UnitedHealth and has continuously held UnitedHealth stock during all times relevant hereto and is committed to retaining UnitedHealth shares through the pendency of this action to preserve his standing. Plaintiff will adequately and fairly represent the interests of UnitedHealth and its shareholders in enforcing its rights.

**B.     Nominal Defendant**

9.     Nominal Defendant UnitedHealth is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at UnitedHealth Group Center, 9900 Bren Road East, Minnetonka, Minnesota 55343. UnitedHealth's common stock is registered on the New York Stock Exchange and trades under the ticker symbol "UNH."

**C.**     **Individual Defendants**

10.     Defendant Andrew Witty has served as CEO and a director of the Company since 2021.  Defendant Witty served as President of UnitedHealth from 2019 to 2021 and CEO of Optum from 2018 to 2021. Defendant Witty also served as a director of UnitedHealth from 2017 to 2018.

11.     Defendant Charles Baker has been a director of the Company since 2023.

12.     Defendant Timothy Flynn has been a director of the Company since 2017.

13.     Defendant Paul Garcia has been a director of the Company since 2021.

14.     Defendant Kristen Gil has been a director of the Company since 2022.

15.     Defendant Stephen Hemsley has been a director of the Company since 2000. Defendant Hemsley serves as Chair of the Board. Defendant Hemsley previously served as Executive Chair of the Board from 2017 to 2019, CEO from 2006 to 2017, President from 1999 to 2014, and Chief Operating Officer from 1998 to 2006.

16.     Defendant Michele Hooper has been a director of the Company since 2007.

17.     Defendant F. William McNabb III has been a director of the Company since 2018.

18.     Defendant Valerie Montgomery Rice has been a director of the Company since 2017.

19.     Defendant John Noseworthy has been a director of the Company since 2019.

20.     Defendants Witty, Baker, Flynn, Garcia, Gil, Hemsley, Hooper, McNabb, Montgomery Rice, and Noseworthy are herein referred to as "Director Defendants".

21.     Defendant Brian Thompson has been Executive Vice President and CEO of UnitedHealthcare, UnitedHealth's insurance segment, since 2021.

22.     Defendants Witty and Thompson are herein referred to as "Officer Defendants."

**JURISDICTION AND VENUE**

4

23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa over the claims of violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

24.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

25.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this court under 28 U.S.C. § 1391, because UnitedHealth is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.     Company Background

27.     UnitedHealth operates two distinct businesses: Optum and UnitedHealthcare. UnitedHealthcare provides health benefit plans, while Optum provides patient care, pharmacy services, and data and technology services to hospitals, life sciences companies, physicians, and health benefit plans.

28.     In February 2022, the DOJ initiated a lawsuit against UnitedHealth, seeking to block Optum's acquisition of Change Healthcare. The DOJ argued that allowing the acquisition to move forward would provide UnitedHealth an advantage against its competitors, namely through

the data that Change Healthcare obtains when helping to process insurance claims. The data concerning processing rules and patient health could be used by UnitedHealthcare, according to the DOJ, to undercut other insurers.

29. After a thorough trial, in September 2022, the Court determined that the DOJ did not prove that the acquisition of Change Healthcare was likely to substantially lessen competition in the relevant markets. The Court noted that in May 2022, UnitedHealth had instituted a firewall to prevent competitively sensitive information from Change Healthcare being shared with UnitedHealthcare. In fact, that firewall formed the foundation of the Court's finding that Optum was not likely to share data with UnitedHealthcare.

### B. UnitedHealth's False and Misleading Statements

30. In March 2022, Optum posted a document entitled "Benefits of Combination with Change Healthcare" on its website. The document emphasized that Optum would "maintain robust firewall processes and extend them to Change Healthcare's business." Those firewall processes were intended to "protect sensitive customer data" and ensure that there was no improper sharing of external-customer competitively sensitive information. Another document, entitled "Optum + Change Healthcare Fact Sheet" touted Optum's "best-in-class firewalls and compliance programs that maintain the integrity of [Optum's] customers' data and information, and prevent unauthorized access and misuse." Critically, Optum declared that "[c]ombining with Change Healthcare alters none of those fundamentals."

31. On May 4, 2022, UnitedHealth filed its Form 10-Q for the quarter ending March 31, 2022. The Form 10-Q made no mention of the antitrust suit brought by the DOJ, nor of firewall processes or other processes meant to prevent the sharing of competitively sensitive customer information.

32.     In May 2022, the Company adopted a new firewall policy specific to the acquisition of Change Healthcare. The new firewall policy strictly prohibited:

a.  The disclosure of external customer competitively sensitive information to internal competitors of such customers;

b.  The use of an external customer's competitively sensitive information to benefit internal competitors to such customers;

c.  Access to external customer competitively sensitive information by UnitedHealthcare employees except where necessary to perform their jobs; and

d.  Access to where external customer competitively sensitive information is stored by internal competitors of such customers.

Competitively sensitive information was defined as nonpublic information that can be used to obtain an advantage over a competitor, customer or supplier.

33.     UnitedHealth published its 2022 Sustainability Report in June 2022. The Sustainability Report stated that the Company was "focused" on "maintaining data privacy," and emphasized the Company's obligations and requirements to protect information. UnitedHealth's data privacy policy "applies to all lines of business and subsidiaries," according to the Sustainability Report, and the Company's Code of Conduct "outlines [its] commitment to protecting the information entrusted to [it]."

34.     On August 3, 2022, UnitedHealth filed its Form 10-Q for the quarter ending June 30, 2022. The Form 10-Q made no mention of the antitrust suit brought by the DOJ, nor of firewall processes or other processes meant to prevent the sharing of competitively sensitive customer information.

35.     On November 2, 2022, UnitedHealth filed its Form 10-Q for the quarter ending September 30, 2022. The Form 10-Q made no mention of the antitrust suit brought by the DOJ, nor of firewall processes or other processes meant to prevent the sharing of competitively sensitive customer information.

36.     On November 28, 2022, UnitedHealth published materials for its annual Investor Conference, which was held the next day. The materials highlighted UnitedHealth's "long-established firewalls and strong legal, reputational, ethical and financial incentives to protect patient and customer information."

37.     On February 24, 2023, UnitedHealth filed its Form 10-K for the year ending December 31, 2022. The Form 10-Q made no mention of the antitrust suit brought by the DOJ, nor of firewall processes or other processes meant to prevent the internal sharing of competitively sensitive customer information.

38.     On June 1, 2023, The Company participated in the Bernstein Strategic Decisions Conference. Defendant Witty spoke on UnitedHealth's firewall requirements but acknowledged that the Company was focused on improving performance by "exploiting the core synergy between Optum and UnitedHealthcare as much as [it] possibly can appropriately, of course, given the firewall requirements [that] are needed there."

**C.     The Truth Emerges**

39.     On February 27, 2024, the Wall Street Journal reported that an antitrust investigation had been opened into UnitedHealth. Specifically, the DOJ was investigating the relationship between UnitedHealthcare and Optum, and whether UnitedHealthcare favors doctor groups acquired by Optum.

40.     Following this news, UnitedHealth's stock price dropped $35.79, or 6.8%, from a

closing price of $525.32 on February 26, 2024, to $489.53 on March 1, 2024, after days of unusually heavy trading.

### D. Defendants' Misconduct Has and Continues to Harm the Company

41. As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is limited to, the costs already incurred and to be incurred defending the Company in the securities class action *City of Hollywood Firefighters' Pension Fund v. UnitedHealth Group Inc., et al.*, Case No. 0:24-cv-01743 (D.Minn.), as well as costs to be incurred in remediating deficiencies in the Company's internal controls. UnitedHealth's reputation and goodwill have also been damaged by the Defendants' misconduct.

### E. Defendants Hemsley and Thompson Unlawfully Traded on Material Nonpublic Information

42. The Company learned of the DOJ's new antitrust investigation on October 10, 2023. A message sent by Rupert Bondy, UnitedHealth's Chief Legal Officer, on October 24, 2023, indicated that the DOJ had sent the Company a document preservation notice.

43. Between October 10, 2023 and February 27, 2024, insiders at UnitedHealth sold approximately $117 million of their UnitedHealth common stock. On October 17, 2023, Defendant Hemsley sold 121,515 shares of UnitedHealth common stock for $65.6 million. On the same date, Defendant Hemsley exercised 83,918 options set to expire on February 12, 2024, and 37,597 options set to expire on November 7, 2024. On December 5, 2023, Hemsley sold 66,081 shares of UnitedHealth common stock for $36.3 million. On the same date, Defendant Hemsley exercised 66,081 options set to expire on November 7, 2024. Defendant Hemsley had not sold UnitedHealth for more than a year, and had not exercised stock options since December 2019. Defendant Thompson sold 28,943 shares on February 16, 2024 and received approximately $15 million, on the same day that he exercised 82,348 stock options that were not set to expire until February 8,

2027 at the earliest. Defendant Thompson had not previously sold UnitedHealth stock while an officer of UnitedHealth.

44.     Defendants Hemsley and Thompson misused corporate property—material nonpublic information—for their own benefit. Both would have been aware of the DOJ's antitrust investigation, as Defendant Hemsley was Chair of the Board and Defendant Thompson was the CEO of UnitedHealthcare. Their positions meant that they were potentially subject to the DOJ's document preservation request or had been informed of the document preservation request shortly after it was made. The information concerning the DOJ's investigation was material nonpublic information, given that the market reacted strongly when the DOJ's investigation came to light.

## F.     The Defendants Breached Their Fiduciary Duties

45.     As officers and/or directors of UnitedHealth, the Defendants owed UnitedHealth fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage UnitedHealth in a fair, just, honest and equitable manner. The conduct of the Defendants involves a knowing or reckless violation of their obligations as directors and officers of UnitedHealth, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Defendants were aware or should have been aware posed a risk of serious injury to the Company.

46.     Defendants, because of their positions of control and authority as directors and/or officers of UnitedHealth, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding UnitedHealth's financial condition, performance, growth, operations, financial statements, business, management, earnings, internal controls, and business prospects, so as to ensure that the market price of the

Company's common stock would be based upon truthful and accurate information.

47.     To discharge their duties, the officers and directors of UnitedHealth were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors and UnitedHealth were required to, among other things:

    a.   Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

    b.   Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

    c.   Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

    d.   Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as

necessary to comply with federal and state securities laws; and

e.  Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

48.  The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

49.  The Board's Audit and Finance Committee is tasked with overseeing the Company's compliance with legal and regulatory requirements, the efficacy of the Company's enterprise risk management structure and key processes, and the integrity of the financial reporting processes. Specifically, according to the Audit and Finance Committee's charter, the Audit and Finance Committee's responsibilities include:

Meet to review and discuss with management and the independent outside auditor the Company's annual and quarterly financial statements, including reviewing the Company's specific disclosures under Management's Discussion and Analysis of Financial Condition and Results of Operations.

* * *

Discuss with management earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies.

* * *

Review with management the system the Company has in place to ensure that the Company's financial statements, reports, and other financial information disseminated to governmental organizations and the public satisfy legal requirements.

Review and assess the effectiveness of the Company's policies, procedures and resource commitment in the areas of compliance, ethics, and privacy, by interacting with the leadership and management responsible for these functions.

\*     \*     \*

Review and assess the effectiveness of the Company's policies, procedures and resource commitment in the areas of cybersecurity and data protection, including key risk areas and mitigation strategies.

\*     \*     \*

Receive and review periodic reports regarding matters relating to the Company's compliance with legal and regulatory requirements from the Chief Compliance and Ethics Officer, who has express authority to communicate directly with the Committee as necessary.

50.     In violation of the Audit and Finance Committee Charter, and their general duties as members of the Audit and Finance Committee, Defendants Baker, Garcia, Gil, and McNabb conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially false and misleading statements regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit and Finance Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

51.     In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about

the financial results of the Internal Foundry Services business segment.

52.    The Defendants also had a duty not to misuse nonpublic company information to profit at the expense of stockholders. In violation of this duty, Defendants Hemsley and Thompson sold shares of Company common stock while in the possession of material nonpublic company information.

## DERIVATIVE ALLEGATIONS

53.    Plaintiff brings this action derivatively in the right and for the benefit of UnitedHealth to redress injuries suffered by UnitedHealth as a direct result of the Defendants' breaches of fiduciary duty.  UnitedHealth is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

54.    Plaintiff will adequately and fairly represent the interests of UnitedHealth in enforcing and prosecuting the Company's rights.

55.    Plaintiff was a stockholder of UnitedHealth at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a UnitedHealth stockholder.

## DEMAND FUTILITY ALLEGATIONS

56.    Plaintiff repeats, re-alleges, and incorporates by reference each and every allegations set forth as though fully set forth herein.

57.    The UnitedHealth Board currently has ten members: Defendants Witty, Baker, Flynn, Garcia, Gil, Hemsley, Hooper, McNabb, Montgomery Rice, and Noseworthy.

58.    Plaintiff has not made any demand on UnitedHealth's current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is

incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

**A.      Defendants Witty and Hemsley are not Independent**

59.      Defendant Witty is the CEO of UnitedHealth, a role he's held since 2021. As an executive officer of the Company, Defendant Witty depends upon the Company for his employment and income. In addition, according to the Schedule 14A Proxy Statement filed with the SEC on April 22, 2024, the Board has determined that Defendant Witty is not independent per NYSE's standards on director independence.

60.      Defendant Hemsley served as Executive Chair of the Board from 2017 to 2019, CEO from 2006 to 2017, President from 1999 to 2014, and Chief Operating Officer from 1998 to 2006. In addition, according to the Schedule 14A Proxy Statement filed with the SEC on April 22, 2024, the Board has determined that Defendant Hemsley is not independent per NYSE's standards on director independence.

61.      In addition, Defendant Hemsley received a material personal benefit that was not shared with other stockholders. Specifically, Defendant Hemsley received $102 million in proceeds from the sale of UnitedHealth stock when he possessed material nonpublic company information. Such an amount is presumptively material. Thus, Defendant Hemsley received a material personal benefit that compromises his impartiality in considering a demand.

**B.      Defendants Baker, Garcia, Gil, and McNabb are not Disinterested Because They Were Members of the Audit and Finance Committee**

62.      The Audit and Finance Committee represents and assists the Board with oversight of the Company's compliance with legal and regulatory requirements, the efficacy of the Company's enterprise risk management structure and key processes, and the integrity of the financial reporting processes. One of the Audit and Finance Committee's responsibilities is to

ensure that the Company's financial statements, reports, and other financial information disclosed to the public complies with legal requirements. Another responsibility is to review and assess the effectiveness of the Company's policies, procedures and resource commitment concerning data protection. The Audit and Finance Committee was thus responsible for reviewing and approving UnitedHealth's press releases, conferences with investors and analysts, and Forms 10-Q and 10-K filed between March 2022 and February 27, 2024. Defendants Baker, Garcia, Gil, and McNabb were members of the Audit and Finance Committee during the relevant time period and were thus responsible for knowingly or recklessly allowing the improper statements related to the Company's data protection policies. Accordingly, Defendants Baker, Garcia, Gil and McNabb breached their fiduciary duty of loyalty and good faith because they participated in the misconduct described above. They face a substantial likelihood of liability for these breaches, making any demand on them futile.

### C.  The Director Defendants Lack Independence Because They Face a Substantial Likelihood of Liability

63.     The Director Defendants face a substantial likelihood of liability for their individual misconduct. As alleged above, the Director Defendants breached their fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. The Director Defendants had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

64.     In addition, the Director Defendants owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the

required diligence and due care. Instead, the Director Defendants knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of UnitedHealth.

65.     The Director Defendants' making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in the Director Defendants facing a substantial likelihood of liability. If the Director Defendants were to bring a suit on behalf of UnitedHealth to recover damages sustained as a result of this misconduct, they would expose themselves and their colleagues to significant liability. For this reason, demand is futile as to the Director Defendants.

66.     Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of § 10(b) of the Securities Exchange Act and Rule 10b-5
### (Against the Defendants)

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     The Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading statements specified above, which they knew or deliberately

17

disregarded were misleading, in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. This course of conduct deceived the investing public, including Plaintiff, as alleged herein.

69.     The Defendants violated § 10(b) of the Securities Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary to make the statements not misleading; or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated.

70.     The Defendants acted with scienter because they: (i) knew that the public documents and statements issued or disseminated in the name of UnitedHealth were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

71.     As a result of the foregoing misconduct, the market price of UnitedHealth common stock was artificially inflated. In ignorance of the falsity of the statements, stockholders relied on the statements described above and/or the integrity of the market price of UnitedHealth common stock in purchasing UnitedHealth common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

72.     Plaintiff has no adequate remedy at law.

<u>**COUNT II**</u>
<u>**Breach of Fiduciary Duty**</u>
<u>**(Derivatively Against the Director Defendants)**</u>

73.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

74.     Each of the Director Defendants owed and owes UnitedHealth the highest obligations of loyalty, good faith, due care, and oversight.

75.     Each of the Director Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

76.     The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

77.     In addition, the Director Defendants further breached their fiduciary duties owed to UnitedHealth by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose that UnitedHealthcare and Optum did not have sufficient firewalls between the units as required by the Company's policies, contradicting the assurances made to the court in the antitrust case brought in 2022. The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

78.     The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately

maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

79.     As a direct and proximate result of the breaches of duty alleged herein, UnitedHealth has sustained and will sustain significant damages.

80.     As a result of the misconduct alleged herein, these Defendants are liable to the Company.

81.     Plaintiff, on behalf of UnitedHealth, has no adequate remedy at law.

**COUNT III**
**Breach of Fiduciary Duty**
**(Derivatively Against the Officer Defendants)**

82.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

83.     The Officer Defendants are executive officers of the Company. As executive officers, the Officer Defendants owed and owe UnitedHealth the highest obligations of loyalty, good faith, due care, oversight, and candor.

84.     The Officer Defendants breached their fiduciary duties owed to UnitedHealth by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact, failing to disclose that UnitedHealthcare and Optum did not have sufficient firewalls between the units as required by the Company's policies, contradicting the assurances made to the court in the antitrust case brought in 2022. The Officer Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or

correct the false and misleading statements and omissions of material fact.

85.     As a direct and proximate result of the breaches of duty alleged herein, UnitedHealth has sustained and will sustain significant damages.

86.     As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

87.     Plaintiff, on behalf of UnitedHealth, has no adequate remedy at law.

**COUNT IV**
**Breach of Fiduciary Duty**
**(Derivatively Against Defendants Hemsley and Thompson)**

88.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

89.     Defendants Hemsley and Thompson, as officers or directors of UnitedHealth, owed and owe UnitedHealth the highest obligations of loyalty, good faith, due care, and oversight.

90.     Defendants Hemsley and Thompson violated and breached their fiduciary duties of loyalty and good faith by using material nonpublic company information to trade in UnitedHealth common stock.

91.     Between October 10, 2023, when the Company was informed of the DOJ's antitrust investigation into UnitedHealth, and February 27, 2024, when the news of that investigation was made public, Defendant Hemsley sold approximately $102 million in UnitedHealth common stock, while Defendant Thompson sold approximately $15 million in UnitedHealth common stock.

92.     Defendants Hemsley and Thompson were aware that the information about the DOJ's antitrust investigation into UnitedHealth would have been a significant factor into the decision to trade in UnitedHealth stock. On the day that the DOJ's antitrust investigation was first reported, February 27, 2024, UnitedHealth's stock closed at $513.42. The next day, on a trading volume that was more than twice the previous day's trading volume, the stock closed at $498.28.

21

Heavy trading volumes continued for the remainder of the week, and the stock eventually closed at $489.53 on March 1, 2024.

93.     In selling shares of UnitedHealth common stock while in the possession of material nonpublic company information, Defendants Hemsley and Thompson misused corporate property for their own benefit and to the detriment of the Company, in violation of their fiduciary duties.

94.     Plaintiff, on behalf of UnitedHealth, has no adequate remedy at law.

### COUNT V
### Unjust Enrichment
### (Derivatively Against Defendants Hemsley and Thompson)

95.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

96.     Defendants Hemsley and Thompson sold approximately $117 million of Company stock while in possession of material nonpublic company information, specifically that the DOJ had opened a new antitrust investigation into UnitedHealth.

97.     The profits gained by Defendants Hemsley and Thompson were derived from improper means and were to the detriment of the Company.

98.     Plaintiff, on behalf of UnitedHealth, has no adequate remedy at law.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment as follows:

A.     Declaring that Plaintiff may maintain this derivative action on behalf of UnitedHealth and that Plaintiff is a proper and adequate representative of the Company;

B.     Declaring that demand against the Board is excused as futile;

C.     Declaring that Defendants breached their fiduciary duties and that Defendants Hemsley and Thompson were unjustly enriched;

D.     Against all of the Defendants and in favor of UnitedHealth for the amount of

damages sustained by the Company as a result of the acts and transactions complained of herein;

E.     Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

F.     Awarding UnitedHealth restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

G.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

H.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  August 12, 2024                    **REINHARDT WENDORF & BLANCHFIELD**

  */s/Garrett D. Blanchfield*
Garrett D. Blanchfield (#209855)
Roberta A. Yard (#322295)
80 South 8th Street, Suite 900
T: (651) 287-2100
g.blanchfield@rwblawfirm.com
r.yard@rwblawfirm.com

**ROWLEY LAW PLLC**
Shane T. Rowley, Esq.
Danielle Rowland Lindahl, Esq.
50 Main Street, Suite 1000
White Plains, New York 10606
Phone: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
           drl@rowleylawpllc.com

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray
230 Park Avenue, Suite 358
New York, NY 10169
Tel: (212) 682-5340
Fax: (212) 884-0988
Email: bmurray@glancylaw.com

**<u>VERIFICATION</u>**

I, Gerald Joseph Lovoi, am the named plaintiff in the foregoing derivative action. I have read the foregoing Verified Stockholder Derivative Complaint, know the contents thereof, and authorized its filing. The contents alleged therein are true to my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. I further declare that I am a current holder, and have been a holder, of UnitedHealth Group Inc. common stock during the time period in which the wrongful conduct alleged and complained of occurred.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of August 2024.

_____
Gerald Joseph Lovoi

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Gerald Joseph Lovoi derivatively on behalf of UnitedHealth Group Inc.

**DEFENDANTS**
Andrew Witty, Charles Baker, Timothy Flynn, Paul Garcia, Kristen Gil, Stephen Hemsley, Michele Hooper, F. William ☐

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Garrett Blanchfield, Reinhardt Wendorf & Blanchfield, 80 So. 8th St., Suite 900, Mpls, MN 55402 651-287-2100

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)
Brief description of cause:
Shareholder Derivative Action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE Jeffrey M. Bryan
DOCKET NUMBER 0:24-cv-01743

DATE
August 12, 2024

SIGNATURE OF ATTORNEY OF RECORD
/s/Garrett D. Blanchfield

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)**

III.   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI.   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII.   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.